**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| NATIONAL WOMEN'S POLITICAL CAUCUS, INC., |
| Plaintiff, |
| v. |
| METROPOLITAN LOUISVILLE WOMEN'S POLITICAL CAUCUS, INC., |
| Defendant. |

Case No. 18-cv-1417 (CRC)

**MEMORANDUM OPINION AND ORDER**

The National Women's Political Caucus ("NWPC") brings this trademark infringement and unfair competition suit against Metropolitan Louisville Women's Political Caucus ("MLWPC"). MLWPC has moved to dismiss the case for lack of personal jurisdiction and improper venue or, alternatively, to transfer the case to a more appropriate venue. For the reasons that follow, the Court will deny all of MLWPC's motions and retain jurisdiction over the case.

**I.     Background**

The Court here provides a brief factual overview to orient the personal jurisdiction and venue analysis. Further details relevant to that analysis will be set forth later in the opinion.

Founded in 1971, NWPC is a multi-partisan, grassroots political organization that seeks to increase women's participation in politics. Compl. ¶ 6. A nonprofit corporation organized under District of Columbia law, NWPC's lone office and employee are located in the District. Id. ¶ 1. In July 1971, NWPC began using in commerce the trademarks "National Women's Political Caucus," "NWPC," and an interlocking five-circle logo, intended to represent women of different races working together toward a common purpose. Id. ¶¶ 8-11. In 2004, NWPC

began using in commerce a modernized version of the logo.  Id. ¶ 12.  NWPC contends that one or the other of the two designs have been in continuous commercial use since 1971.  It also contends that it has acquired proper registration for these marks.  See id. ¶¶ 18-23.

MLWPC was established in 1972 as a local chapter of NWPC.  Id. ¶ 24.  It is a nonprofit corporation organized under Kentucky law and headquartered in Louisville, Kentucky.  Id. ¶ 2.  NWPC says that it permitted MLWPC to use its marks so long as MLWPC remained a "local chapter in good standing," which requires the payment of membership dues to NWPC, attendance at NWPC meetings, and compliance with NWPC's bylaws, among other things.  Id. ¶¶ 27-29.

In October 2016, however, NWPC "became concerned that MLWPC was violating NWPC's bylaws, including by endorsing male candidates for office and by failing to collect and transmit membership dues to NWPC."  Id. ¶ 30.  In December 2017, an NWPC attorney sent MLWPC a demand letter that purported to revoke MLWPC's permission to use any NWPC mark.  Id. ¶ 32.  MLWPC refused to comply, even after NWPC repeated its demands.  See id. ¶¶ 33-36.

NWPC filed suit in June 2018.  It brought claims for trademark infringement under 15 U.S.C. § 1114(1); trademark infringement, unfair competition, false designation of origin, and trade name infringement under 15 U.S.C. § 1125(a); and common-law trademark infringement, unfair competition, and unjust enrichment.  MLWPC thereafter moved to dismiss the case for lack of personal jurisdiction and improper venue or, alternatively, to transfer the case to Kentucky, which it contends is a more appropriate venue.  Those motions are now ripe for the Court's resolution.

## II. Legal Standards

### A. Motion to Dismiss for Lack of Personal Jurisdiction

When a defendant moves to dismiss a lawsuit for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of making a *prima facie* showing that the Court has personal jurisdiction over the defendant." Bigelow v. Garrett, 299 F. Supp. 3d 34, 40-41 (D.D.C. 2018) (citation omitted). To do so, the "plaintiff must provide sufficient factual allegations, apart from mere conclusory assertions, to support the exercise of personal jurisdiction over the defendant." Howe v. Embassy of Italy, 68 F. Supp. 3d 26, 29 (D.D.C. 2014). In determining whether a plaintiff has met this burden, "the Court is not limited to the four corners of the operative complaint, but rather may receive and weigh affidavits and other relevant matter to assist in determining jurisdictional facts." Xie v. Sklover & Co., LLC, 260 F. Supp. 3d 30, 37 (D.D.C. 2017) (internal quotations marks and citation omitted). "All factual discrepancies, however, must be resolved in the plaintiff's favor." Bigelow, 299 F. Supp. 3d at 41.

### B. Motion to Dismiss or Transfer for Improper Venue

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a suit for improper venue. "In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." Hunter v. Johanns, 517 F. Supp. 2d 340, 343 (D.D.C. 2007) (quoting Darby v. Dep't of Energy, 231 F. Supp. 2d 274, 276 (D.D.C. 2002)) (internal quotation marks omitted).

### III. Analysis

MLWPC moves to dismiss the case for lack of personal jurisdiction and improper venue. The Court begins with the personal jurisdiction question.

#### A. Personal Jurisdiction

"There are two types of personal jurisdiction: 'general or all-purpose jurisdiction, and specific or case-linked jurisdiction.'" Xie, 260 F. Supp. 3d at 39 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). General jurisdiction exists where a defendant is so "at home" in the forum state that they can be sued there for any reason, whether related to the defendant's activities in the forum or not. Goodyear, 546 U.S. at 919. Specific jurisdiction, as its name implies, means that the defendant's contacts with the state must be tethered to the subject of the suit. Id. NWPC contends that the Court would have either form of jurisdiction over MLWPC, though it offers a serious argument only in regard to the latter. The Court will accordingly focus its analysis on that issue.

Determining whether the Court has personal jurisdiction over a nonresident defendant like MLWPC turns, at first glance, on two questions: first, whether the D.C. long-arm statute authorizes jurisdiction, see D.C. Code § 13-423, and second, whether the exercise of jurisdiction comports with federal due process. Xie, 260 F. Supp. 3d at 39. But these two questions are really one and the same: The D.C. long-arm statute, as most relevant here, authorizes the exercise of jurisdiction over any defendant "transacting any business in the District of Columbia," D.C. Code § 13-423(a)(1), and this prong of the statute has been held to be "coextensive with the due process clause," Xie, 260 F. Supp. 3d at 39 (quoting Helmer v. Doletskaya, 393 F.3d 201, 205 (D.C. Cir. 2004)).

For the exercise of jurisdiction to be consistent with the due process clause, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quotations omitted). But "where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum," he has sought the "benefits and protections of the forum's laws," and it is therefore "presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." Id. at 475-76 (quotations omitted).

In addition to finding that the defendant purposefully availed itself of the forum state's benefits and protections, the Court must also conclude that "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Id. at 476 (quoting Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 320 (1945)). This inquiry requires courts to consider "relevant factors" beyond the burden on the defendant. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980) (instructing courts to consider factors like the forum state's "interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," and the judiciary's "interest in obtaining the most efficient resolution of controversies").

The Court will first address what turns out to be the most difficult question: whether MLWPC's contacts with, and activities in, the District of Columbia are sufficient to find that it purposefully availed itself of the privilege of conducting business here. The Court will then

consider the propriety of exercising jurisdiction—regardless of MLWPC's contacts—in light of the "fair play and substantial justice" factors. Finally, the Court will examine the case-specific jurisdiction question, *i.e.* whether the contacts MLWPC has with the District are sufficiently related to the subject of the suit for this Court to exercise jurisdiction over MLWPC.

*Purposeful Availment*. It is evident that MLWPC's activities within the District of Columbia are ample enough to constitute purposeful availment.

Chief among these activities is MLWPC's decades-long practice of collecting and sending membership dues to NWPC in D.C. See Pl's Opp., Exs. E-F to Lent Decl. (documenting several years' of payments from MLWPC to NWPC). Several features of this practice are key to the jurisdictional question. For one, MLWPC sought and received—from NWPC, while in D.C.—permission to collect membership renewal fees. Pl's Opp., Ex. L to Lent Decl. (1989 MLWPC meeting minutes reporting that its representative "did ask National while in Washington if locals have the right to send out local renewal notices, which was affirmed"). For another, it appears that both parties to the suit believed MLWPC was *required* to collect and remit national member dues to NWPC in D.C. Though MLWPC now disputes that it was obligated to collect NWPC dues from its members, exhibits submitted by NWPC tell a different story. NWPC's bylaws require local caucuses to "[c]ollect and forward to the national office on a regular and timely basis . . . the national portion of any and all NWPC membership dues paid at the state or local level." Pl's Opp., Ex. A to Lent Decl., at 4.[1] MLWPC, at least for a time, acted accordingly; in 1990, for instance, the bulk of an MLWPC member's annual dues—$20 of $35—

---

[1] The Court acknowledges that MLWPC disagrees with NWPC's interpretation of the bylaws, but at the motion to dismiss stage, all fact disputes must be resolved (and all permissible inferences must be drawn) in a plaintiff's favor.

was set aside for NWPC. Id., Exs. J-K. to Lent Decl. Indeed, it was, at least in part, MLWPC's decision to stop collecting and forwarding national member dues that caused NWPC to threaten to "de-credential" MLWPC and demand that it stop using NWPC marks. Id., Exs. CC-DD to Lent Decl.

The record contains additional evidence of MLWPC and NWPC's close and continuing relationship. MLWPC's own bylaws, for example, state that membership in the local caucus is "open to all persons, 18 years or older, who subscribe to the principles of the National Women's Political Caucus," and that the "goals of [MLWPC] shall be . . . [t]o encourage and support the efforts of women who run for or are appointed to office, who support the goals of the National Women's Political Caucus." Id., Ex. D to Lent Decl. This was more than just lip service; internal discussions demonstrate that MLWPC took seriously its obligation to observe NWPC protocol. See, e.g., Id., Ex. BB. to Lent Decl. (1991 MLWPC minutes reporting that NWPC's rule against endorsing male candidates made advocacy difficult in certain local races).[2] The bylaws also provide that if MLWPC were to dissolve, "its property [would] be distributed to the state and or national Women's Political Caucus." Id., Ex. D. to Lent Decl. And finally, the very subject of the suit—MLWPC's allegedly infringing use of NWPC's marks—stands as further evidence of the parties' ongoing relationship.

That is not all. NWPC has also provided evidence of significant interaction between MLWPC members and NWPC. See Pl's Opp. at 8-10. The exhibits attached to NWPC's opposition show that MLWPC routinely encouraged its members to attend NWPC conventions

---

[2] As with the dues, MLWPC's later failure to abide by the no-male-endorsement rule played a part in NWPC's decision to reprimand and eventually de-credential the local chapter. Id., Exs CC-DD to Lent Decl.

and seek leadership roles in NWPC. Id., Exs. O-R, V. They also show that MLWPC's leadership consistently communicated with NWPC leadership. Id., Exs O, T-V. While these contacts are not as significant to the Court's analysis as are the paying of dues and the agreement to abide by NWPC's rules—especially because they speak more to the actions of individual MLWPC members rather than of the organization itself—they still counsel in favor of finding personal jurisdiction.

So this is what we know: MLWPC regularly collected and sent dues to NWPC in D.C.; it agreed to conduct itself according to NWPC's rules and envisioned itself as furthering the goals of NWPC, as reflected in its bylaws and through its use of NWPC's marks; it encouraged its members to participate in NWPC activities; and it maintained regular communication with NWPC since its inception. Taken together, these are strong indicia that MLWPC maintained an ongoing relationship with a D.C.-based entity, such that it purposefully availed itself of the benefits and protections of D.C. law. It strikes the Court that these systematic and continuous contacts with the District ought to make MLWPC amenable to a lawsuit here.

MLWPC's efforts to challenge that intuition all come up short. As for the dues issue, MLWPC makes three points: first, that it was not *required* to collect dues on behalf of NWPC; second, that it merely gave local members the *option* to join the national organization; and third, that it never paid NWPC out of its own coffers and only served as a "pass through" for its members' dues. See Def's Reply at 6; Woodward Aff. ¶ 11-12. The trouble with the first two arguments, however, is that they run counter to NWPC's allegations and supporting exhibits—which plausibly show that both NWPC and MLWPC, for at least some period of their relationship, believed the local caucus was required to collect dues on behalf of the national organization and that local members may have automatically paid national dues by joining the

8

local organization. See *supra* 4. And, on a motion to dismiss, a plaintiff's factual allegations must be accepted as true unless they are "directly contradicted by an affidavit," which here they are not. Azamar v. Stern, 662 F. Supp. 2d 166, 171 (D.D.C. 2009) (citation omitted). MLWPC's third dues argument likewise fails, because it is unimportant for personal jurisdiction purposes whether it was transmitting to D.C. the local group's own money or that of its individual members—what matters is that, in either case, MLWPC was in continuous contact with the national organization in D.C.

As for MLWPC's attempts to paint itself an independent actor, see Def's Reply at 3, it is true that the local organization has its own bylaws, but it is equally true that those bylaws reflect the group's close affiliation with NWPC. See supra 7; Pl's Opp., Ex. D to Lent Decl. Evidence of this relationship abounds throughout NWPC's supporting exhibits: MLWPC understood it had to abide by NWPC rules, the MLWPC mission statement tracks verbatim NWPC's mission statement, and the two organizations used the same five-circled design mark that is the subject of this suit, compare id., Ex. A to Lent Decl. with Ex. D to Lent Decl. In light of all this, MLWPC's attempts to minimize its relationship with NWPC, at least at the motion to dismiss stage, are unavailing.

The cases MLWPC cites do not alter the analysis. Hoping to lessen the import of MLWPC's affiliation with NWPC, it cites both Lapointe v. Van Note, No. CIV. 03-2128, 2004 WL 3609346, at *5 (D.D.C. Nov. 9, 2004) and Am. Ass'n of Cruise Passengers v. Cunard Line, Ltd., 691 F. Supp. 379, 381 (D.D.C. 1987). But both cases involved far more attenuated contacts than this one. In Lapointe, the court held that Earth Island Institute's ("EII") membership in the media consortium Monitor—EII's lone contact with the District of Columbia—did not provide a basis for personal jurisdiction. 2004 WL 3609346, at *5. Missing from Lapointe, however, is

anything like MLWPC's solicitation, collection, and transmission of dues to a D.C.-based entity, or the understanding that one organization would have to abide by the other's rules and regulations. Cunard, meanwhile, is even further afield. There, the defendant's contacts with D.C. "consist[ed] entirely of sporadic attendance at trade association meetings held in [D.C.]" and limited communications with a national office in D.C. that had nothing to do with the plaintiff. 691 F. Supp. at 381. Needless to say, there is a stark difference between membership in a D.C. organization—replete with dues-paying obligations and conformity to rules and regulations of a governing body—and "sporadic attendance at trade association meetings."

In support of its argument that the collection and transmission of dues to NWPC does not create a basis for personal jurisdiction in D.C., MLWPC urges the Court to consider COMSAT Corp. v. Finshipyards S.A.M., 900 F. Supp. 515 (D.D.C. 1995). MLWPC cites COMSAT for the proposition that "[p]erforming 'administrative services' on behalf of a Washington, D.C. entity does not, standing alone, provide a basis for personal jurisdiction." Def's Reply at 7 (quoting COMSAT, 900 F. Supp. at 522). There are several problems with MLWPC's reliance on COMSAT. As an initial matter, even if the case did stand for the proposition MLWPC claims it does, neither NWPC's argument nor the Court's conclusion is to the contrary; it is not the transmission of dues to NWPC in D.C. *standing alone* that renders MLWPC subject to personal jurisdiction in D.C., but instead all the various other contacts just described taken together. What's more, COMSAT is factually nowhere close to this case. There, a nonresident accounting firm (defendant Finshipyards) acted as an intermediary between a D.C.-based telecommunications firm (plaintiff COMSAT) and COMSAT's customers in Zaire. COMSAT would provide Finshipyards with invoices for its Zaire customers; Finshipyards would transmit those invoices to the Zaire customers; those customers would provide payment to Finshipyards;

10

and Finshipyards would then transfer the funds to a COMSAT bank account in New York City. Id. The COMSAT court held that this was clearly insufficient to show "any desire of Finshipyards to do business with COMSAT in Washington, D.C.," id. at 523, and for good reason: its only real "contact" with D.C. was receiving phone bills for COMSAT's Zaire customers "that reflected COMSAT's Washington, D.C., address."[3] That fortuitous and attenuated connection is nothing like MLWPC's longstanding relationship with NWPC in the District.

Perhaps recognizing the absence of helpful case law, MLWPC makes much of the fact that "NWPC cites no case under which any court—much less a court in this jurisdiction—found specific personal jurisdiction over an organization based solely on its 'affiliation' with or membership in an in-state entity." Def's Reply at 4. But NWPC need not cite a case standing for that proposition, because a holding in favor of NWPC does not depend on that proposition. Far from finding personal jurisdiction based on the *status* of the relationship between MLWPC and NWPC, it is the specific contours of that relationship—including MLWPC's active efforts to affiliate with NWPC, its collection and transmission of dues to NWPC in D.C., and the fact that

---

[3] Here the Court must also note that MLWPC—intentionally or not—misreports the analysis in COMSAT. MLWPC states, in relevant part, that "[t]his Court held that although the accounting authority had 'conduct[ed] business' in the District of Columbia by billing for Zaire's communication service, this activity 'was related to its supplying telecommunications service to *Zaire*, not for the provision of any services to [the accounting authority] or receipt of services from [the accounting authority].'" Def's Reply at 7 (quoting COMSAT, 900 F. Supp. at 522 (alterations MLWPC's)). But the court in fact said something very different. It said that *COMSAT*—not the "accounting authority" (defendant Finshipyards)—conducted business in D.C. by billing for Zaire's telecommunications, but that those D.C. activities had nothing to do with Finshipyards and thus could not provide a basis for personal jurisdiction in D.C. with respect to Finshipyards. See COMSAT, 900 F. Supp. at 522 ("To be sure, COMSAT did conduct business, including billing for Zaire's telecommunications service, in the District of Columbia.")

MLWPC had to conform to NWPC rules to retain its status as a local caucus—that expose MLWPC to suit in the District.

And though no precise analog appears to exist, courts have suggested these sorts of contacts create a basis for personal jurisdiction. In <u>Burger King</u>, for example, a Florida-based franchisor sued a Michigan-based franchisee for breach of the franchise agreement and trademark infringement. 471 U.S. at 468-69. Though the defendants resided in Michigan and had hardly any physical ties to Florida, the Supreme Court concluded that a Florida court could exercise personal jurisdiction over them because they had "deliberately reached out beyond Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization." <u>Id.</u> at 479-80 (cleaned up). That affiliation "envisioned continuing and wide-reaching contacts with Burger King in Florida," including "long-term and exacting regulation of his business" by the Florida headquarters and the regular payment of royalties to the same. <u>Id.</u> at 480. These contacts—and the Florida choice-of-law provision in the franchise agreement—made it "presumptively reasonable" that the nonresident defendants would be "called to account" in Florida. <u>Id.</u> Many of the salient facts in <u>Burger King</u> are present here, including (1) a nonresident defendant's decision to reach out and establish a relationship with an entity in the forum state, (2) an ongoing relationship requiring the defendant to conduct itself in accord with the forum state entity's specifications, and (3) payment from the defendant to the forum state entity.

Granted, the <u>Burger King</u> analogy is not a perfect one. Here, there was no written contract between the two entities, nor was MLWPC subject to "the national organization's *exacting* regulation of virtually every conceivable aspect of . . . operations." <u>Id.</u> at 465 (emphasis

12

added). To the contrary, MLWPC had wide latitude to chart its own course, and focused much of its time and resources on supporting local candidates; that is the very point of local caucuses.

All the same, these distinctions are not enough to compel a different conclusion on the personal jurisdiction question. Burger King made clear that the existence of a contract is not dispositive in either direction. Id. at 478-79 (emphasizing that personal jurisdiction does not "turn on mechanical tests" (citation and internal quotation marks omitted)). And even if Burger King exercised a greater degree of control over its franchisees than NWPC did over MLWPC, that does not mean the degree of control in Burger King must always exist to subject a local affiliate to personal jurisdiction in a national organization's home forum; such reasoning confuses what was sufficient in one case with what is necessary in every other case. Courts have had no trouble extending the principles embodied by Burger King to other types of relationships, even when obvious factual differences obtain.[4] In Hogar CREA, Inc. v. Hogar CREA Int'l of Connecticut, Inc, to take one example, a Puerto Rican court exercised personal jurisdiction over Massachusetts and Connecticut entities because they "voluntarily chose to affiliate with an existing Puerto Rico organization, rather than form an independent local entity," thereby "creat[ing] long-term relationships with [Puerto Rico]" and "voluntarily submitt[ing] to

---

[4] Moreover, it's not as if every factual distinction that exists between Burger King and this case shows that the former presented a comparatively stronger basis for personal jurisdiction. One example pointing in the opposite direction: the franchisee-defendants in Burger King were subject to "supervision emanating from Burger King's district office in [Michigan]," which the court of appeals and the dissent believed in effect severed the tie to Florida. Here, by contrast, MLWPC cannot and does not argue that its relationship with some more local entity, for instance the Kentucky Women's Political Caucus, caused it to "believe that [its] working relationship with [the national organization] began and ended in" Kentucky. See Burger King, 471 U.S. at 489 (Stevens, J., dissenting).

regulation and oversight from entities in Puerto Rico." 708 F. Supp. 2d 158, 172-73 (D.P.R. 2009). In so holding, the court leaned heavily on Burger King, despite acknowledging that it was unclear whether the plaintiff and defendants entered into a contract and that the defendants were subject to "more limited" regulations than the franchisee in Burger King. Id. at 171.

Just so here. MLWPC voluntarily chose to affiliate with NWPC, thereby creating an ongoing relationship between the two entities. The fact MLWPC was obligated—according to NWPC's allegations, which the Court must take as true for the purposes of this motion—to remit membership dues to the national organization in D.C., all while abiding by NWPC's rules, using NWPC's marks, and encouraging its members to attend and participate in NWPC events, suggests MLWPC "reach[ed] out beyond one state and create[d] continuing relationships and obligations with citizens of another state," namely D.C. Travelers Health Ass'n v. Com. of Va. ex rel. State Corp. Comm'n, 339 U.S. 643, 647 (1950). That is a quintessential act of purposeful availment. Burger King, 471 U.S. at 476 (citing Travelers for the proposition that "continuing obligations" is indicative of purposeful availment).

*Fair Play and Substantial Justice Factors*. MLWPC devotes little space in its submissions to the argument that, even if the Court were to find that MLWPC purposefully availed itself of the privilege of conducting business in D.C., it would nevertheless be gravely unfair to subject it to suit there. It appears MLWPC believed that the battle has likely been lost if the fight reached this front—and they are correct. None of the factors courts typically consider suggest exercising jurisdiction over MLWPC would offend "our traditional conception of fair play and substantial justice." International Shoe, 66 S. Ct. at 320; see World-Wide Volkswagen, 444 U.S. at 292 (listing considerations). The District of Columbia has a strong interest in adjudicating the dispute, since NWPC is headquartered here, and the marks NWPC seeks to

protect are used here. The plaintiff's interest in obtaining speedy relief and the judiciary's interest in efficiently resolving the controversy either auger in favor of keeping the case in this Court—thereby avoiding the delay caused by dismissal and starting the case from scratch elsewhere—or break in neither direction. The Court therefore determines that subjecting MLWPC to suit in the District of Columbia would not offend traditional notions of fair play and substantial justice.

*Relationship Between Contacts and Subject of Suit*. That leaves only the question whether NWPC's causes of action "arise out of or relate to" MLWPC's contacts with the forum. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). The Court concludes that they do. While NWPC sues MLWPC for trademark infringement and unfair competition that occurred in Kentucky, NWPC contends that "were it not for MLWPC's purposeful contacts with NWPC and this District, MLWPC never would have had the implied license [to use its mark] in the first place." Pl's Opp. at 18 (citing Lent Decl. ¶¶ 8, 11-21). Taking that allegation as true for the purposes of this motion, this lawsuit "arise[s] out of" MLWPC's contacts with NWPC in the District of Columbia. Heliocopteros, 466 U.S. at 414. Moreover, the test for trademark infringement and unfair competition—likelihood of consumer confusion—might well turn on the nature and closeness of the relationship between MLWPC and NWPC. See Am. Soc'y for Testing & Materials, et al. v. Pub.Res.Org, Inc., 896 F.3d 437, 456 (D.C. Cir. 2018) (listing factors, including "similarity of the marks, the proximity of the goods, . . . [and] the defendant's intent in adopting the mark"). In this way, then, MLWPC's contacts with NWPC in D.C. also "relate to" the subject of the litigation. Heliocopteros, 466 U.S. at 414. The subject matter of the litigation and MLWPC's contacts with the District of Columbia are therefore sufficiently connected to support specific jurisdiction.

B. <u>Venue</u>

MLWPC next moves either to dismiss the case for improper venue or to transfer it to a more convenient forum. The Court will reject both requests.

Venue law ensures that only courts with some interest in the dispute or the parties adjudicate the claims at issue. Under the general venue provisions for federal question cases set forth in 28 U.S.C. § 1391(b), venue is proper in the district where (1) a defendant resides, if all defendants reside in the same state; (2) the events giving rise to the suit occurred, or a substantial part of property that is the subject of the suit is located; or (3) if venue would not be proper in any district for those reasons, wherever the defendants are subject to personal jurisdiction. Venue is plainly proper under section 1391(b)(1): MLWPC is a corporation, and a corporation is "deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." § 1391(c)(2). Because the Court has already held that MLWPC is subject to personal jurisdiction in D.C., the District is also an appropriate venue.

Even where venue is technically proper, however, a case may be transferred to a more convenient forum. Under 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought" if it serves "the convenience of the parties and witnesses" and is "in the interest of justice." The first question is *could* this case have been brought in Kentucky? The answer is clearly yes, since MLWPC is at home there and the alleged infringement took place there. The second question is *should* the case, for the convenience of the parties and in the interest of justice, nevertheless be litigated in Kentucky? The Court thinks not, but that answer warrants a bit more discussion.

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). This inquiry requires the Court to "use[] its broad discretion to balance case-specific factors related to the public interest of justice and the private interests of the parties and witnesses." Aftab v. Gonzalez, 597 F. Supp. 2d 76, 80 (D.D.C. 2009). "[P]rivate-interest factors include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof." Aishat v. U.S. Dep't of Homeland Sec., 288 F. Supp. 3d 261, 268 (D.D.C. 2018) (quotation omitted). The relevant "public-interest factors include: "(1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the transferor and transferee courts; and (3) the local interest in having local controversies decided at home." Id. (quotation omitted). "[T]he burden of demonstrating that an action should be transferred is on the movant." Air Line Pilots Ass'n v. E. Air Lines, 672 F. Supp. 525, 526 (D.D.C. 1987).

Among the private-interest factors, the plaintiff's choice of forum generally warrants "paramount consideration," id., and here plaintiffs have chosen to litigate in D.C. MLWPC asserts that NWPC's choice of forum deserves less deference "because the balance of convenience strongly favors Kentucky," Def's MTD at 16 (internal quotation marks omitted), but it offers little support for this claim. MLWPC obviously would *prefer* to litigate the case in Kentucky, but the Court is unconvinced that Kentucky would be any more convenient than D.C., let alone clearly so. It is likely the case will involve witnesses located in D.C., Kentucky, and elsewhere around the country; neither forum would eliminate the need for at least some

17

witnesses to travel.  As for the convenience of the parties, NWPC is based in D.C., and its key board member in the case, president Donna Lent, would prefer to litigate here.  While it would be more convenient for MLWPC to litigate in Kentucky, where all its board members reside, transfer for this reason would simply "shift inconvenience to the plaintiffs" rather than "lead to an overall increase in convenience for the parties."  U.S. ex rel. Westrick v. Second Chance Body Armor, Inc., 771 F. Supp. 2d 42, 48 (D.D.C. 2011).  The final convenience factor, the ease of access to sources of proof, is also a wash; MLWPC admits that the main sources of proof will consist of "documentary evidence that can be readily exchanged electronically," and so this factor favors neither venue.  Def's Opp. at 16.

To be sure, there are certain other situations where the plaintiff's choice of forum warrants substantially less deference, including where the venue chosen is "not plaintiff's home forum" and "there is an insubstantial factual nexus between the case and the plaintiff's chosen forum," New Hope Power Co. v. U.S. Army Corps of Engineers, 724 F. Supp. 2d 90, 95 (D.D.C. 2010), or where a forum-selection clause applies, Revis v. Tustin Constr. Servs., LLC, 322 F. Supp. 3d 58, 62 (D.D.C. 2018).  But neither of those features is present in this case.

Not much need be said on the public-interest factors.  MLWPC spends most of its single paragraph on this issue explaining why D.C. is not the superior forum rather than explaining why Kentucky is.  But that argument supports the status quo, not transfer.  MLWPC does claim that Kentucky has a stronger "local interest" in the case since MLWPC is a "Kentucky organization, with Kentucky-based board members, and with an entirely local focus."  Def's Reply at 17.  All that is true, but much the same could be said for the other side: NWPC is a D.C.-based organization, with its only office and employee in the city.  The Court therefore cannot see how

Kentucky's interest in the parties' trademark infringement and unfair competition dispute is any stronger than D.C.'s.

For all these reasons, the Court will deny MLWPC's motion to transfer the case.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [8] Defendant's Motion to Dismiss for Lack of Jurisdiction and Improper Venue or, Alternatively, to Transfer is DENIED. It is further

**ORDERED** that the Defendant shall file an answer to the complaint on or before February 11, 2019.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: January 14, 2019